UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRIS NOVAK, | Case No.: 5:13-CV-01971-EJD |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| NANOLOGIX, INC., | |
| Defendant. | **[Re: Docket No. 15]** |

Presently before the court in this breach of contract action is Defendant NanoLogix, Inc.'s Motion to Dismiss Plaintiff Chris Novak's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). Dkt. No. 15. The court found this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Having fully reviewed the parties' briefing, and for the following reasons, the court GRANTS NanoLogix's Motion.

**I.    Background**

This case arises out of NanoLogix's alleged failure to pay Mr. Novak approximately $100,000 in cash and stock for services rendered. Amended Complaint ¶¶ 7, 15, Dkt. No. 6. Mr. Novak is a patent attorney who lives and works in Santa Clara County, California. Dkt. No. 6 ¶ 1; Declaration of Christopher Novak ISO Pl. Opp'n ¶ 2, Dkt. No. 17-2. NanoLogix is a biotechnology company based in Ohio. Dkt. No. 6 ¶ 2; Declaration of Philip Abromats ISO Def. Mot. Dismiss Ex. A ¶ 2, Dkt. No. 15-1. The parties' relationship began in May 2007 when Dana

1

Case No.: 5:13-CV-01971-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Allen, a director of NanoLogix and colleague of Mr. Novak, introduced Mr. Novak to NanoLogix's CEO, Bret Barnhizer, during a meeting in a Starbucks in Cupertino, California. Dkt. No. 17-2. ¶¶ 2, 6, 9. In the months following the Starbucks meeting, Mr. Novak began performing intellectual property work for NanoLogix on a contract basis. The parties entered into a formal retention agreement ("the Agreement") on February 25, 2008. Dkt. No. 15-1, Ex. G. Mr. Novak purportedly performed intellectual property work under the Agreement for NanoLogix from California until his termination on November 19, 2009. See Dkt. No. 15-1, Ex. A ¶ 11.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move for dismissal based on a lack of personal jurisdiction. Two independent limitations may restrict a court's power to exercise personal jurisdiction over a nonresident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process. Sher v. Johnson, 911 F.2d 1357, 1360 (9th Cir. 1990). California's statutory limitation is co-extensive with the outer limits of due process. See id. at 1361; Cal. Code Civ. Proc. § 410.10. Accordingly, the jurisdictional inquiries under federal due process and California law merge into a single analysis. See Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

Due process permits the exercise of jurisdiction if a court has either general or specific jurisdiction over a nonresident defendant. See Sher, 911 F.2d at 1361. "General jurisdiction applies where a defendant's activities in the state are 'substantial' or 'continuous and systematic,' even if the cause of action is unrelated to those activities. Where general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action." Id. (internal citations omitted).

Although the plaintiff bears the burden of demonstrating jurisdiction, where, as here, a court considers only written materials, the plaintiff need only make a prima facie showing of jurisdictional facts to overcome a defendant's motion to dismiss. See Data Disc, Inc. v. Systems Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). A plaintiff makes a prima facie showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of jurisdictional facts. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether

2

Case No.: 5:13-CV-01971-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint and must resolve any conflicts over statements made in the parties' affidavits in the plaintiff's favor. See Love v. Associated Newspapers, Ltd., 611 F.3d 601, 608 (9th Cir. 2010). "However, the court need not assume the truth of mere conclusory allegations." China Tech. Global Corp. v. Fuller, Tubb, Pomeroy & Stokes, No. 05-cv-1793-JW, 2005 WL 1513153, at *1 (N.D. Cal. June 27, 2005).

### III. Discussion

#### a. General Personal Jurisdiction

The parties do not appear to seriously dispute that this court does not have general personal jurisdiction over NanoLogix. While Mr. Novak parenthetically suggests that general jurisdiction exists and includes several points in his Opposition that appear directed towards such a proposition, he does not present a substantial or cogent argument to support his assertion. "The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence.'" Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006) (quoting Bancroft & Mastersm Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Without more, Mr. Novak's points do not suffice to meet his burden of establishing general jurisdiction.

#### b. Specific Personal Jurisdiction

In the absence of general personal jurisdiction, a court may nonetheless exercise specific personal jurisdiction over a defendant when the suit "arises out of or relates to actions by the defendant himself that are purposefully directed toward forum residents, and where jurisdiction would not otherwise offend 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (internal quotes and italics omitted). The Ninth Circuit employs a three-part test to determine whether specific jurisdiction exists:

(1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

3
Case No.: 5:13-CV-01971-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

   (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

   (3) the exercise of jurisdiction must comport with fair play and substantial justice, <u>i.e.</u> it must be reasonable.

<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004).  If the plaintiff satisfies the first two prongs, then the burden shifts to the defendant on the third prong to establish a compelling case that the exercise of jurisdiction is unreasonable.

  The first prong of the Ninth Circuit's test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." <u>Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme</u>, 379 F.3d 1120, 1124 (9th Cir. 2004) (quoting <u>Burger King</u>, 471 U.S. at 475); <u>see also</u> <u>Sinatra v. Nat'l Enquirer, Inc.</u>, 854 F.2d 1191, 1195 (9th Cir. 1988) (explaining that under the first prong, the court looks to "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff").  Typically, a "purposeful availment" analysis, which considers whether the defendant has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state" is used in cases sounding in contract, whereas a "purposeful direction" analysis, which considers the effects of defendant's conduct, is used in cases sounding in tort.  <u>Schwarzenegger</u>, 374 F.3d at 802-03; <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 653 F.3d 1066, 1077 (9th Cir. 2011) (internal citations omitted).  Here, Plaintiff's sole cause of action is for breach of contract and thus the court must apply a purposeful availment analysis.  In considering purposeful availment, the court is also mindful of the second prong of the Ninth Circuit's test, namely, that Plaintiff's claim must arise out of Defendant's forum-related activities. <u>See</u> <u>Mattel, Inc. v. Greiner and Hausser GmbH</u>, 354 F.3d 857, 864 (9th Cir. 2003).

  Notably, the Amended Complaint contains few, if any, allegations in support of the exercise of specific jurisdiction.  <u>See</u> Dkt. No. 6.  Thus, the court turns to the parties' arguments, declarations, and evidence for purposes of its purposeful availment analysis.  Mr. Novak argues that NanoLogix purposefully availed itself of California by (1) selecting a director that lived in

4
Case No.: 5:13-CV-01971-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

California; (2) seeking out equity investors in California; (3) presenting its products at various conferences in California; (4) researching some of its products in California; (5) coming to California specifically to interview him and (6) having him perform services in California. See Dkt. No. 17 at 3-4. While the first four activities may be relevant to an analysis of general jurisdiction, they are inapposite as to the specific jurisdiction Mr. Novak asks this court to exercise. NanoLogix's reaching into California to seek capital and customers simply has no relation to Mr. Novak's breach of contract claim. The latter two activities, however, concern the formation and performance of the employment contract between Mr. Novak and NanoLogix; as such, these arguments are highly relevant to the purposeful availment inquiry.

A contract in and of itself is generally insufficient to establish minimum contacts with a forum. Burger King, 471 U.S. at 478. Thus the Agreement here does not, without more, show that NanoLogix purposefully availed itself of California. In order to make such a determination, the court must evaluate other factors surrounding the contract such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." See Burger King, 471 U.S. at 478-79. Mr. Novak argues that these additional factors—the parties' prior negotiations and continuing relationship—demonstrate that NanoLogix has made sufficient contacts with California such that the court can exercise personal jurisdiction over it. See Dkt. No. 17 at 4.

As to prior negotiations, Mr. Novak argues that Mr. Barnhizer met with him in California specifically for the purpose of allowing him to "share [his] skills and background for possible employment." Dkt. No. 17-2 ¶ 6; see Decl. of Dana Allen ISO Pl. Opp'n ¶ 14, Dkt. No. 17-2 at 51. NanoLogix contends that Mr. Barnhizer assumed Mr. Novak's presence at the Starbucks meeting to be "purely social." Supp. Decl. of Bret Barnhizer ISO Def. Reply ¶ 6, Dkt. No. 18-1. According to Mr. Novak, Mr. Allen requested Mr. Novak's resume before the meeting, allegedly so that he could present it to Mr. Barnhizer. Dkt. No. 17-2 ¶ 7. In support of this interpretation, Mr. Novak submits a heavily redacted email he received from Mr. Allen bearing the subject line "Resume and [Redacted]" and containing the statements "Please send me your current resume, ASAP" and "On drawings, going thru them." Dkt. No. 17-2 ¶ 7, Ex. D. Mr. Novak also submits

1    an email he sent to both Mr. Barnhizer and Mr. Allen approximately one hour prior to the
2    Starbucks meeting, to which he attached patents that he wrote for a different company, as well as
3    an email, the subject line and body of which are entirely redacted, that he appears to have sent to
4    Mr. Allen on June 4, 2007. Dkt. No. 17-2, Exs. E, H.

5          Mr. Novak's evidence, as presented, is not admissible.[1] However, even assuming that the
6    court could consider this evidence, the emails provide such little context that the court could not
7    find that Mr. Novak has met his burden to establish a prima facie showing of jurisdictional facts
8    through them. The emails as presented do not suggest that Mr. Barnhizer or NanoLogix sought
9    Mr. Novak out in California. In fact, Mr. Novak submits additional material that would prevent the
10   court from making any such finding. He admits that he was working for Mr. Allen in a separate
11   context; thus, the heavily redacted email discussing drawings and requesting his resume could just
12   as logically have been for that project. See Dkt. No. 17-2 ¶ 2. Additionally, Mr. Novak does not
13   allege that NanoLogix or Mr. Barnhizer requested the patent samples contained in the second
14   email; rather, he states in his declaration that it is his "standard practice" to bring these materials,
15   along with a copy of his resume, when meeting with a prospective client. Dkt. No. 17-2 ¶ 8.

16         The totality of Mr. Novak's arguments and evidence, at best, establishes a prima facie
17   showing that Mr. Allen intended to connect Mr. Novak with Mr. Barnhizer and that Mr. Novak
18   pitched himself to Mr. Barnhizer. Nothing presented by Mr. Novak suggests that Mr. Barnhizer or
19   NanoLogix sought out the meeting or otherwise solicited him. This distinction is an important one:
20   Mr. Allen was not an agent of NanoLogix and thus his actions do not, under these circumstances,
21   form the basis for jurisdiction over the company, whereas Mr. Barnhizer, an officer, could act in a
22   way to establish jurisdiction. See Restatement (Third) of Agency § 1.01 cmt. f(2) (2006) ("[T]he
23   directors are neither the shareholders' nor the corporation's agents…In any event, the directors'
24   ability to bind the corporation is invested in the directors as a board, not in individual directors
25   acting unilaterally."). Given that Mr. Novak's evidence relates only to his own and Mr. Allen's
26   intent, the court cannot find that he has met his burden to show that NanoLogix reached into

---

[1] Mr. Novak did not seek nor was granted leave to seal any portion of his Opposition or supporting materials as required by Civil Local Rule 79-5(b) and (d). Nor did Mr. Novak supply unredacted versions of these documents to the court as required by Civil Local Rule 79-5(c). Thus, the court cannot properly consider these exhibits.

California for the purpose of hiring or negotiating an agreement with him.  See, e.g., Slepian v. Guerin, No. 98-35039, 1999 WL 109676 (9th Cir. Mar. 1, 1999) (finding that the Oregon plaintiff's act of sending her resume to the defendant's headquarters in California and seeking an interview in California was a unilateral action, "weigh[ing] against a determination that [defendant] purposefully conducted any activity in [Oregon]").  Moreover, even if it could be inferred that Mr. Barnhizer entered California with the intent to interview and hire Mr. Novak, that single meeting alone would not suffice to convey personal jurisdiction over NanoLogix.  See Roth v. Garcia, 942 F.2d 617, 621-22 (9th Cir. 1991) (finding that the facts that the plaintiff had solicited the defendant and that the parties had only a single meeting in the forum state prior to contract formation "work[ed] in [defendant's] favor" as to purposeful availment).

As to the remaining Burger King considerations of contemplation of future consequences, the terms of the contract, and the parties' course-of-dealing, Mr. Novak only asserts that he is a California resident and that his work was performed in California.  See Dkt. No. 17 at 6; Dkt. No. 17-2 ¶¶ 12, 21.  Mr. Novak does not point to any terms of the Agreement or detail the services he performed for NanoLogix under it other than referring to his services as "patent work."  See Dkt. No. 17-2 ¶ 12. Without more, these statements do not constitute a prima facie showing of jurisdictional facts.

Looking to the Agreement itself, the court finds that it weighs against finding jurisdiction over NanoLogix.  The Agreement specifies that Mr. Novak would perform services related to patent, copyright and trademark law, specifically "patent mining, reviewing invention disclosures, talking with inventors, performing prior art studies, drafting patent applications, writing patent applications, [and] filing and prosecuting patent applications." Dkt. No. 15-1, Ex. G at 1.  In addition, the Agreement is clear that Mr. Novak's duties would be limited to these intellectual property services and would not entail handling any issues arising under Ohio or federal law.  Id. Thus, even assuming Mr. Novak performed services covered by the contract, any such services involved the intangible personal property of an Ohio corporation and were directed towards the

USPTO, which is located in Alexandria, Virginia.[2]  Moreover, though the Agreement does not contain a forum selection clause, it does specify that Ohio law will govern any arbitration for malpractice disputes; by contrast, the Agreement at no point invokes California law.  Dkt. No. 15-1, Ex. G at 2.  Under these terms, it does not appear that the parties contemplated that Mr. Novak's services for NanoLogix would be directed at California residents, courts, or businesses.  See Slepian, 1999 WL 109676 at *2 (finding no personal jurisdiction where the facts that plaintiff lived and worked in the forum state "were not coupled with other contacts initiated by [the nonresident defendant] and directed toward the forum").

### IV.   Conclusion

On this record, the court finds that NanoLogix did not purposefully avail itself of California and, as such, Mr. Novak has not satisfied his burden of showing that the court may exercise personal jurisdiction over Nanologix.  Accordingly the court GRANTS NanoLogix's Motion to Dismiss without leave to amend.

The clerk shall CLOSE this file.

**IT IS SO ORDERED**

Dated: March 11, 2014



EDWARD J. DAVILA
United States District Judge

---

[2] Mr. Novak does allege that he staffed a NanoLogix booth at a convention in Sacramento, but fails to connect that work to the intellectual property work covered by the contract.  See Dkt. No. 17-2 ¶ 13.